IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JUSTIN BECK**,

Plaintiff

v.                                                        CIV No. 10-486 MCA/WPL

**BOARD OF COUNTY COMMISSIONERS
OF GRANT COUNTY, NEW MEXICO,
JOHN PAUL SAARI, JIM MOFFETT, JOHN
PAUL AMADOR, TOBIAS RODRIGUEZ,
CASEY YOUNG, ERIKA JIMENEZ,
GABRIEL FLORES, and JOHN DOES 1-5,**

Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** is before the Court on *Plaintiff Justin Beck's Motion For Substitution Of Party* [Doc 34] and the *Motion To Dismiss Of Grant County, Moffett, And Saari* [Doc 19].  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies  *Plaintiff Justin Beck's Motion For Substitution Of Party* [Doc 34] and grants the *Motion To Dismiss Of Grant County, Moffett, And Saari* [Doc 19].

**I.**      <u>**BACKGROUND**</u>

The following facts are drawn from the *Complaint For Violation Of Civil Rights, Conspiracy And Related State Statutory And Common Law Claims* (*Complaint*) [Doc 1], filed by Plaintiff, Justin Beck.  Plaintiff was incarcerated in the Grant County Detention Center (GCDC) for a period of 364 days, following a guilty plea on two counts of reckless driving resulting in great bodily injury.  [<u>Id.</u> at 3-4]  During his incarceration,

Plaintiff was coerced by corrections officers, who are named defendants in the present action, to fight with another inmate.  [Id. at 4]  Plaintiff alleges that other inmates were also coerced into fighting for the amusement of the defendant corrections officers.  [Id. at 4-5]

Eventually, the coerced fights, or "cage fights," were discovered, and the defendant corrections officers were terminated from their employment and criminal charges were brought against them.  [Id. at 5]  Plaintiff was required to give testimony against the defendant corrections officers. In order to secure Plaintiff against threats to his personal safety, he was moved from GCDC to a Hidalgo County facility.  [Id.]  On March 9, 2009, he was transferred from the Hidalgo County facility back to GCDC.  Upon his delivery to the GCDC, he alleges that he was "delivered" by employees of GCDC into the hands of inmates who "were known gang members."  [Id.] He was beaten by those inmates, and the inmates threatened that he or his family would be killed if he testified against the defendant corrections officers.  [Id. at 6]  On March 10, 2009, the GCDC employees who had delivered Plaintiff to the dangerous inmates "checked with other inmates to make certain that Plaintiff had been beaten, threatened and injured."  [Id.]

Plaintiff brought suit against the named defendant corrections officers, the GCDC employees who delivered him to the dangerous inmates (identified in the *Complaint* as

"John Does 1-5"), the Board of County Commissioners for Grant County, John Paul Saari ("County Manager"), and Jim Moffett ("Jail Administrator").[1]

## II.   ANALYSIS

Each pending *Motion* is addressed in turn.

## A.   Motion To Substitute

In *Plaintiff Justin Beck's Motion For Substitution Of Party* [Doc 34], Plaintiff states that Mr. John Paul Amador, one of the defendant corrections officers, was killed on July 13, 2010 in a motorcycle accident.  [Doc 34 at 1]  As a result, Plaintiff requests, pursuant to Federal Rule of Civil Procedure 25(a)(1), that either Mr. Amador's personal representative or his successor be substituted as a party in place of Mr. Amador in order to defend the personal capacity claims.  [Id. at 1]  In the *Motion*, Plaintiff did not identify a personal representative or successor.  At the request of the Court, Plaintiff filed *Plaintiff Justin Beck's Amended Motion For Substitution Of Party*, and identified a specific individual to be substituted.  [Doc 38] He identified Jim Moffett.  [Id.]  As noted above, Jim Moffett is also a defendant in the present case, identified as the Jail Administrator for the Grant County Detention Center.  [Doc 1 at 2]

Mr. Moffett responded to the *Amended Motion*, contending that he is not a proper party for substitution and that not all of Plaintiff's claims against Mr. Amador survived his death.  In his reply, Plaintiff asserts that Rule 25(a)(1) imposes no burden on the party

---

[1]  The *Complaint* identifies "Jim Moffit," but in the *Memorandum In Support Of Motion To Dismiss Of Grant County, Moffett, And Saari* [Doc 20], Defendants state that the defendant's name is properly spelled "Moffett."  [Id. at 1, n.1]

requesting substitution to name the individual to be substituted and additionally, that the

Rule does not require the party requesting substitution to establish that the claims are not

extinguished.  The parties' arguments and requests require this Court to carefully consider

the requirements of the Rule, as well as the respective burdens imposed.

Pursuant to Rule 25(a)(1),

> [i]f a party dies and the claim is not extinguished, the court may order
> substitution of the proper party. A motion for substitution may be made by
> any party or by the decedent's successor or representative.   If the motion is
> not made within 90 days after service of a statement noting the death, the
> action by or against the decedent must be dismissed.

Rule 25(a)(3) further requires that "[a] motion to substitute, together with a notice of

hearing, must be served on the parties as provided in Rule 5 and on nonparties as

provided in Rule 4."  The Rule continues to require that "[a] statement noting death must

be served in the same manner."

According to the Rule, the beginning of the process of substitution is the service of

the "statement noting death."  Service of the statement noting death must be

accomplished "on nonparties as provided in Rule 4."  Rule 25(a)(3).  Our Circuit has

explained that this requirement mandates that service of the statement noting death be

accomplished on "the successors or representatives of the deceased party's estate. . . ."

Grandbouche v. Lovell, 913 F.2d 835, 837 (10th Cir. 1990).  It is insufficient to simply

serve the "attorneys for the parties," even if those attorneys included the "decedent's

attorney who is also the attorney for decedent's estate."  Id.  In Grandbouche, the 90-day

period did not begin to run because the statement noting death was not served on the personal representative of the decedent's estate.  Id.

Indeed, this requirement is sensible.  The party who wishes to trigger the 90-day period for substitution must identify the "proper party" for substitution and serve that person.  Put another way, a party cannot trigger the limitation period and then sit back and wait while the opposing party scrambles to identify the personal representative of the estate.  The present case is an excellent example of the difficulty presented:  one Defendant, Mr. Amador, died, and another Defendant, the Board of County Commissioners of Grant County, filed a statement noting death.  The statement noting death does not appear to have been served on the personal representative of Mr. Amador's estate.  Plaintiff has encountered difficulty identifying the personal representative of Mr. Amador's estate, or whether one has been appointed according to law, presumably because the estate does not want to be sued.  The matter is further complicated because although the summons was returned executed on Mr. Amador, he died only days later, before he had an opportunity to obtain counsel or before any counsel that he may have engaged could enter an appearance.  Thus, Plaintiff has no official contact for Mr. Amador.

Defendant Board of County Commissioners of Grant County cannot trigger the 90-day limitation period on substitution until the estate or personal representative is identified and served with the statement noting death.  See Kasting v. Am. Fam. Mut. Ins. Co., 196 F.R.D. 595, 601 (D.Kan. 2000) ("The 90 day limitation period of Rule 25(a)(1)

is measured from the time the suggestion of death has been served upon the parties to the action and other interested persons. . . .").  Thereby, Plaintiff will have the opportunity to timely and properly file his motion for substitution and serve it on the proper party.  See Rule 25(a)(3) (requiring service of the motion for substitution on nonparties pursuant to Rule 4—i.e. personal service); Fariss v. Lynchburg Foundry, 769 F.3d 958, 962 (4th Cir. 1985) *cited with approval in* Grandbouche, 913 F.3d at 837 ("As the suggestion of death is served in the same manner as the motion to substitute, a party may be served through his attorney, Fed.R.Civ.P. 5(b), but nonparties must be personally served. Fed.R.Civ.P. 4(d)(1).").

To briefly address Plaintiff's contention that Rule 25(a) does not require any showing on his part, the Court observes that the Rule is permissive—"the court *may* order substitution."  Rule 25(a)(1); see also Anderson v. Yungkau, 329 U.S. 482, 485 (1947) (emphasis added) (considering a former version of the rule and noting that substitution is not a matter of right:  "the court 'may' order substitution but it is under no duty to do so").  The Rule is further conditional.  Substitution may occur if the claim is "not extinguished" and only the "proper party" may be substituted.  Thus, some showing that a claim is not legally extinguished by death is necessary.  Further, the Rule imposes no hardship by limiting substitution to the "proper party," especially in light of this Court's determination that the statement noting death must be personally served on the nonparty successor—who will be the proper party for substitution.  See Fariss, 769 F.3d at 962 ("The nonparties for whom Rules 25(a)(1) and 4(d)(1) mandate personal service are

evidently the successors or representatives of the deceased party. This conclusion follows both from the language of Rule 25(a)(1), which refers to no other nonparties, and from the rule's underlying policies." (internal quotation marks and citation omitted)). Presently, no party to this case has identified a representative or successor representative for substitution purposes.  Accordingly, *Plaintiff Justin Beck's Motion For Substitution Of Party* and *Plaintiff Justin Beck's Amended Motion For Substitution Of Party* both are denied without prejudice.

## B.    Motion To Dismiss

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  The sufficiency of a complaint is a question of law, and when considering and addressing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006).  Further, in order to withstand a rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (Twombly).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal citation omitted) (Iqbal).  If a

plaintiff cannot nudge the claims "across the line from conceivable to plausible," the complaint must be dismissed.  Id. at 570.

In handing down Twombly, the United States Supreme Court invalidated the longstanding rule that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Conley standard has proved problematic over the years because it suggests that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46).  As a result, defendants may be forced to bear the burden and expense of discovery before they are afforded a real opportunity to seek the dismissal of groundless claims, while plaintiffs may use the burdensome discovery process as leverage to induce otherwise unjustified settlement of such groundless claims.  See Twombly, 550 U.S. at 557-59.

A complaint is now subject to dismissal if it does not "possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).  In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable

likelihood of mustering factual support for *these* claims." Ridge at Red Hask, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

Two "working principles" underlie the Twombly standard. Iqbal, 129 S.Ct. at 1949.

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Id. at 1949-50 (internal citations omitted).  Thus, in order to evaluate a motion to dismiss, the Court engages in a two-part inquiry by initially identifying those allegations that are nothing more than legal conclusions and therefore "not entitled to the assumption of truth" and then considering whether the factual allegations "plausibly suggest an entitlement to relief."  Id. at 1951.  Accordingly, the Court begins by evaluating the elements of the pleaded causes of action, in order to determine whether the *Complaint* states sufficient factual allegations to plausibly suggest entitlement to relief.  See id. at 1947.

Plaintiff's *Complaint* raises nine counts.  Counts I, II, and III are claims for alleged violations of constitutional rights, brought under 42 U.S.C. § 1983.  Count IV alleges that

Defendants[2] retaliated against Plaintiff because he exercised a constitutional right.  Count

V is a civil conspiracy claim, and the remaining Counts VI, VII, VIII, and IX allege

violations of state law.  Each count is addressed in turn.

**1.     Section 1983**

42 U.S.C. § 1983 provides, in relevant part, that

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983.  Persons sued in their individual capacity under this civil-rights statute

generally are entitled to qualified immunity unless the plaintiff can establish that the

defendant's actions violated a specific federal statutory or constitutional right and that the

rights which they allegedly violated were clearly established at the time of the conduct at

issue.  See Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001); Oliver v. Woods,

209 F.3d 1179, 1185 (10th Cir. 2000).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme

Court or Tenth Circuit decision on point, or the clearly established weight of authority

from other courts must have found the law to be as the plaintiff maintains."  Medina v.

---

[2]  For the purposes of this section of the analysis, the term "Defendants" refers to
only those defendants who moved the Court for dismissal:  Moffett, Saari, and the Board
of County Commissioners for Grant County.

City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).  But "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  Hope v. Pelzer, 536 U.S. 730, 741, 745 (2002); accord Holland v. Harrington, 268 F.3d 1179, 1197 (10th Cir. 2001).  The "salient question" is whether the state of the law at the time of the incident gave the defendants "fair warning" that their conduct was unconstitutional.  Hope, 536 U.S. at 741.  If a plaintiff cannot show that a clearly established constitutional right was violated, the Court must grant the defendant qualified immunity.  See Gross, 245 F.3d at 1156.

Plaintiff's Section 1983 claims are based on alleged violations of the Eighth Amendment.  Counts I and II state that Defendants violated the Eighth Amendment by taking action with deliberate indifference to a substantial risk of harm to him.  [Doc 1 at 6-7]  Count I encompasses Defendants' alleged  use of "other inmates" to harm Plaintiff both for Defendants' own amusement and for retaliation.  [Id. at 6]  Count II addresses Defendants' alleged "transfer of Plaintiff into conditions posing a substantial risk of harm."  [Id. at 7]  Count III alleges that Defendants "owed Plaintiff a duty to exercise reasonable care to safeguard him from attack by other inmates."  [Id. at 8]

Defendants cite three bases for their *Motion* to dismiss.  First, they argue that the *Complaint* fails to meet the pleading standards which stem from Twombly and Iqbal. Second, they contend that Saari and Moffett are entitled to qualified immunity for any properly pleaded constitutional violations.  Finally, Defendants maintain that Plaintiff's

allegations do not support a finding of municipal liability.  The Court first considers

whether Plaintiff has properly pleaded violations of the Eighth Amendment.

**a.      The Eighth Amendment**

The Eighth Amendment's prohibition against cruel and unusual punishment

"encompasses deliberate indifference by prison officials."  Howard v. Waide, 534 F.3d

1227, 1235 (10th Cir. 2008).  It is well established that "prison officials have a duty to

protect prisoners from violence at the hands of other prisoners."  Id. at 1236 (quoting

Farmer v. Brennan, 511 U.S. 825, 833 (1994)).  Nevertheless, in order to establish a

violation of this duty, Plaintiff must allege facts to support three criteria.  First, Plaintiff

must allege facts to show that "the conditions of his incarceration present an objective

substantial risk of serious harm."  Howard, 534 F.3d at 1236 (internal quotation marks

and citation omitted).  Next, Plaintiff must allege that the "prison officials had subjective

knowledge of the risk of harm."  Id.  Put another way, Plaintiff must allege that the

official was both "aware of the facts from which the inference could be drawn that a

substantial risk of serious harm exists, and [the official] must also draw the inference."

Id.  Subjective knowledge may be demonstrated by "inference from circumstantial

evidence" or "by the very fact that the risk was obvious."  Id.  Third, if Plaintiff is able to

properly plead objective risk and subjective knowledge, Plaintiff must still allege that

Defendants failed to respond "reasonably to the risk."  See id. at 1239.

Defendants do not dispute that Plaintiff has alleged "an objective substantial risk

of serious harm."  Id.  Indeed, Plaintiff alleges that he was moved from GCDC to a

facility in Hidalgo County "to secure him against threats to his personal safety."  [Id. at 5]

The threats to his safety appear to have stemmed from his anticipated testimony against

the named defendant corrections officers, regarding their orchestration of fights between

prison inmates.  [Id.]  Despite this transfer to ensure Plaintiff's safety, in March 2009, he

was transferred back to GCDC.  [Id. at 5] Plaintiff's *Complaint* further states that on

March 9, 2009, he was "delivered . . . into the hands of inmates at the [GCDC] who were

known gang members," that he was beaten by those inmates, and that on March 10, 2009,

certain defendants "checked with other inmates to make certain that Plaintiff had been

beaten, threatened and injured."  [Id. at 5-6]  Based on these allegations, Plaintiff has

properly pled a substantial and objective risk of serious harm.

      The second inquiry is whether Plaintiff has alleged facts to support the claim that

Moffett and Saari had subjective knowledge of the substantial risk.  Turning to the

*Complaint*, very few facts relate to the actions of Moffett and Saari.  Indeed, the

*Complaint*'s only references to Moffett and Saari, by name, are (1) in the caption, (2) to

allege that Moffett is the "Jail Administrator" at GCDC and that Saari is the "County

Manager" for Grant County, and (3) with reference to Count IX, a state-law claim.  [Id. at

2]  Absent from the *Complaint* is any allegation that Moffett or Saari were responsible for

prisoner transfers, were supervisors of the other individual defendants, or were even

employed by their respective agencies at the time of the alleged wrongdoing.

      In his *Response*, Plaintiff contends that the *Complaint* properly pleads the

following:  (1) that Moffett and Saari "permitted" the cage-fighting matches and

retaliatory beatings to take place, (2) that Moffett and Saari knew of the fighting but did

nothing to stop the activity, (3) that Moffett and Saari were willfully ignorant of the acts

of "their inferiors," (4) that Moffett and Saari "knew or should have known that Plaintiff

had been moved out of the Grant County facility for his own protection," and (5) that

Plaintiff was transferred back to the GCDC at the direction of Moffett and/or Saari.  [Doc

22 at 4-6]  To the contrary, however, the *Complaint* fails to allege facts to support these

claims.  As to the first three contentions, rather than supporting Plaintiff's current

position, the *Complaint* states that after the cage fighting was discovered, the offending

corrections officers were fired and criminally charged.  [Doc 1 at 5]  There are no factual

allegations "plausibly showing" that Moffett and Saari "permitted" the fighting, that they

knew of the fighting and remained willfully ignorant, or even that their job duties put

them in a position to monitor the behavior of the corrections officers who instigated the

fighting. See Iqbal, 129 S.Ct. at 1952 (explaining that the complaint must contain facts

"plausibly showing" the elements of the asserted cause of action).

       In relation to Plaintiff's transfer back to GCDC, the only statement of fact in the

*Complaint* that could be related to Moffett or Saari is that "Plaintiff was moved from the

jail in Hidalgo County to the Grant County Detention Center."  [Id. at 5]  There is no

allegation that either Moffett or Saari was responsible for Plaintiff's transfer (or transfers

in general) or had any knowledge of either his transfer or his circumstances.  Further,

even if Moffett and Saari "should have known" that Plaintiff had been transferred out of

GCDC for his own safety, the Supreme Court of the United States has clearly established

that the "deliberately indifferent" standard, under the Eighth Amendment, carries a higher state of mind burden than "knew or should have known."  See Farmer, 511 U.S. at 838 ("But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."); Dodds v. Richardson, 614 F.3d 1185, 1211 (10th Cir. 2010) (cautioning that "it is not enough to merely show[ ] that a supervisor should have known that a subordinate was violating someone's constitutional rights.  Instead, only a supervisor's actual knowledge of his subordinates' behavior will demonstrate the requisite deliberate, intentional act by the supervisor to violate constitutional rights. Negligence—even gross negligence—is insufficient to prove that the supervisor caused a violation" (alteration in original)(internal quotation marks and citations omitted)).

In order to sufficiently allege supervisory liability for Moffett and Saari, Plaintiff is required to set forth facts plausibly showing that these defendants deliberately and intentionally violated his constitutional rights, as well as showing "an affirmative link between the supervisor and the violation."  Id. at 1195, 1199 ("[Section] 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . .

secured by the Constitution. . . ." (alterations in original) (internal quotation marks and citation omitted)).[3]

As drafted, *Complaint* does not contain sufficient factual content to allow this Court to draw the reasonable inference that Moffett and Saari are  liable for the alleged Eighth Amendment violations.  See Iqbal, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Because I conclude that the *Complaint* does not satisfy the pleading standard set forth in Twombly and Iqbal, there is no need to address the question of qualified immunity at this time.

**b.**     **Municipal Liability**

A municipality is not "held liable under § 1983 solely because its employees inflicted injury."  Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006).  Instead, "to establish municipal liability, a plaintiff must show:  (1) the existence of a municipal policy or custom and (2) a direct causal link between the policy or custom and the injury alleged."  Id.  Plaintiff has not alleged a specific count against Grant County as a defendant.  In his *Response*, Plaintiff states that the Grant County can be made liable for Moffett and Saari's actions that were taken in their official capacities.  [Doc 22 at 9] Indeed, an "official capacity claim" is "actually" a claim against the municipality.  Id.

---

   [3]  The Dodds Court goes so far as to question whether Iqbal left supervisory liability under Section1983 as a viable claim under any circumstances.  See Dodds, 614 F.3d at 1198-99.

Defendants contend that Plaintiff has failed to allege any facts supporting a "municipal policy or custom."  [Doc 20 at 13]  Plaintiff responds that the "Complaint is made against the foremost two County officials whose 'acts may fairly be said to represent official policy' regarding the treatment and protection of prisoners at the [GCDC]."  [Doc 22 at 9]  This statement, however, together with the factual allegations in the *Complaint*, do not support an inference that either the cage-fighting matches or Plaintiff's transfer back to GCDC was the result of a policy or custom.  It is not a reasonable inference that every action taken at the GCDC is taken in compliance with an official policy or custom.  See Gallagher v. Sheldon, 587 F.3d 1063, 1068 (10th Cir. 2009) ("'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting Iqbal, 129 S.Ct. at 1949).  Further, as discussed in the previous section, the *Complaint* fails to allege an specific actions taken by Moffett or Saari.  Simply filing an action against a person in their "official capacity" does not automatically create a factual basis for a court to infer a municipal policy or custom.

Alternatively, Plaintiff could establish a claim for municipal liability by pleading that a constitutional violation resulted from the decisions of an employee with final policy-making authority.  See Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189 (10th Cir. 2010).  Plaintiff, however, has failed to plead any facts to allege that either Moffett or Saari possessed relevant final policy-making authority.  See id. ("Three factors help us decide whether an individual is legally a final policymaker for a

municipality:  (1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decision[s] are final—i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." (alteration in original) (internal quotation marks and citation omitted)).  Absent factual allegations to support the existence of a pertinent policy or custom, Plaintiff's municipal liability claim must be dismissed.

**2.**     **Retaliation**

Plaintiff also contends that "Defendants' behavior" was in retaliation against him for the exercise of his right to testify about the forced cage fights.  [Doc 1 at 9]  Our Circuit has held that "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights."  Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998) (alteration in original) (internal quotation marks and citation omitted).  The Peterson Court explained that a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place."  Id. (internal quotation marks and citation omitted).  Thus, "[a]n inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  Id. (internal quotation marks and citation omitted).

The deficiency of Plaintiff's *Complaint* is that although he asserts that Defendants' "behavior" was retaliatory, he has not alleged what that behavior actually was—*what*

Moffett and Saari are alleged to have done.  Presumably, that "behavior" was failing to

stop the cage fighting sooner and transferring Plaintiff back to GCDC.  This Court has

already addressed Plaintiff's failure to sufficiently allege factual support for these claims

against Moffett and Saari.  Further, Plaintiff has not alleged sufficient facts to support a

conclusion that "but for" a retaliatory motive, Plaintiff would not have been transferred

back to GCDC or the cage fighting would have stopped sooner.  See Gallagher, 587 F.3d

at 1068 ("Conclusory allegations are not enough to withstand a motion to dismiss.").

Accordingly, Count IV is dismissed.

**3.      Civil Conspiracy**

In the *Complaint*, Plaintiff has alleged that Defendants engaged in a civil

conspiracy to violate his civil rights, contrary to 42 U.S.C. § 1988.  [Doc 1 at 3]

Section1988 refers to attorney fees and costs.  Construing Plaintiff's claim to be brought

under to 42 U.S.C. § 1985(3), which is titled "Conspiracy to interfere with civil rights,"

this Court nevertheless determines that Plaintiff has failed to allege facts to support a

conspiracy claim.

"The essential elements of a § 1985(3) claim are:  (1) a conspiracy; (2) to deprive

plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance

of the conspiracy; and (4) an injury or deprivation resulting therefrom."  Tilton v.

Richardson, 6 F.3d 683, 686 (10th Cir. 1993).  In addition, "§ 1985(3) does not apply to

all tortious, conspiratorial interferences with the rights of others, but rather, only to

conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously

discriminatory animus." Id. (internal quotation marks and citation omitted).  This "class-based animus" requirement has been narrowly construed.  Id.  Finally, "§ 1985(3) covers only conspiracies aimed at interfering with rights that are protected against private, as well as official, encroachment."  Id. (internal quotation marks and citation omitted).  The *Complaint* is devoid of any allegations that would support an inference of class-based animus against Plaintiff, racial or otherwise.  Accordingly, Count V is dismissed.

**4.**     **State Law Claims**

Plaintiff's remaining claims, Counts VI through IX, are state-law claims.  Pursuant to 28 U.S.C. § 1367(c)(4), this Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [the Court] has dismissed all claims over which it has original jurisdiction. . . ."  The Supreme Court of the United States has explained that "[a] district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."  Carlsbad Tech., Inc. v. HIF Bio, Inc., 129 S.Ct. 1862 (2009).  Although the Court has dismissed the federal claims against Defendants, these recommendations do not fully dispose of the case in this Court.  There remain additional defendants—four named corrections officers and five John Doe corrections officers.  The Court therefore has not yet dismissed "all claims over which it has original jurisdiction"—only the federal claims regarding Defendants.  Accordingly, the Court considers the viability of the state claims.

Plaintiff raises four state-law claims:  assault, battery, false imprisonment, and negligent maintenance of buildings.  [Doc 1 at 11-13]  As with the earlier constitutional

claims, Plaintiff has not alleged any facts to support a plausible claim that Moffett or

Saari caused an assault by engaging in threatening or menacing conduct that caused

Plaintiff to reasonably believe that he was in danger of battery, see Baca v. Velez, 114

N.M. 13, 15, 833 P.2d 1194, 1196 (Ct. App. 1992); that Moffett or Saari "caused" a

battery, see Selmeczki v. N.M. Dep't of Corr., 2006-NMCA-024, ¶ 29, 139 N.M. 122,

129 P.3d 158 ("It is black-letter law that causing an offensive touching, even indirectly to

another's clothing and not resulting in injury, is the tort of battery."); or that Moffett or

Saari confined or restrained Plaintiff with knowledge that they had no lawful authority to

do so.  See Santillo v. N.M. Dep't of Pub. Safety, 2007-NMCA-159, ¶ 12, 143 N.M. 84,

173 P.3d 6.  For these reasons, Counts VI, VII, and VIII are dismissed.

In his final claim, Plaintiff alleges that Defendants "failed to maintain penal

facilities in Grant County in a reasonably safe condition."  [Doc 1 at 13]  Although

Plaintiff does not so state, it would appear that this claim is brought under NMSA 1978, §

41-4-6 (2007).  Section 41-4-6 waives immunity for "for damages resulting from bodily

injury, wrongful death or property damage caused by the negligence of public employees

while acting within the scope of their duties in the operation or maintenance of any

building, public park, machinery, equipment or furnishings."  In the current context, the

New Mexico Supreme Court has held that "[t]he 'operation' and 'maintenance' of the

penitentiary premises, as these terms are used in Section 41-4-6, does not include the

security, custody, and classification of inmates."  Archibeque v. Moya, 116 N.M. 616,

619, 866 P.2d 344, 347 (1993).

In Archibeque, a prison official negligently classified the plaintiff as an inmate who could be released into the general population.  Id.  The same night, the plaintiff was beaten by enemies, whom he had identified to the prison official prior to his release into the general population.  Id. at 618, 866 P.2d at 346.  Despite the prison official's negligence, the New Mexico Supreme Court stated that the classification of inmates was "an administrative function associated with the operation of the corrections system."  Id. at 619, 866 P.2d at 347.  Such administrative functions are not encompassed by the waiver of immunity in Section 41-4-6  because that statute is intended "to ensure the general public's safety by requiring public employees to exercise reasonable care in maintaining and operating the physical premises owned and operated by the government." Id.

Plaintiff does not allege facts to support a claim that Defendants negligently maintained or operated "the prison's physical premises" or that Defendants' negligence created an unsafe condition on the prison premises as to the general prison population, as required under Archibeque for the application of Section 41-4-6.  Archibeque, 116 N.M. at 6120, 866 P.2d at 348; but see Callaway v. N.M. Dep't of Corr., 117 N.M. 637, 644, 875 P.2d 393, 400 (Ct. App. 1994) (applying Section 41-4-6 to waive immunity when the defendants "knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable").  Accordingly, as Plaintiff has failed to state claim for relief under Section 41-4-6, Count IX should also be dismissed.

**5.**     **Leave to Amend**

This Court should freely grant leave to amend a deficient pleading, when justice so requires.  See Fed. R. Civ. P. 15(a)(2).  Accordingly, although Plaintiff's *Complaint* is dismissed as to Defendants Moffett, Saari and Board, he is granted fourteen days to file an amended complaint.

**III.     CONCLUSION**

For the reasons stated above, Plaintiff's Amended Motion for Substitution of Party is denied without prejudice.  Plaintiff's *Complaint* is dismissed as to Defendants Moffett, Saari, and the Board of County Commissioners for Grant County, provided that Plaintiff is granted leave to amend the complaint to satisfy the standards set forth in Iqbal and Twombly.

**IT IS THEREFORE ORDERED** that *Plaintiff Justin Beck's Motion For Substitution Of Party* [34]and *Plaintiff Justin Beck's Amended Motion For Substitution Of Party* [38] are **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that the *Motion To Dismiss Of Grant County, Moffett, And Saari* [Doc 19] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff is **GRANTED** fourteen days from the entry of this order to amend his complaint.

**SO ORDERED**,  this 29th day of March, 2011, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
United States District Judge